**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee and Appellant,**

v.

**CHIVINGTON et al., Appellants and Appellees.**

[Cite as *Nationwide Mut. Ins. Co. v. Chivington* (1991), 72 Ohio App.3d 700.]

Court of Appeals of Ohio,
Franklin County.

Nos. 90AP–589, 90AP–630.

Decided Feb. 26, 1991.

*Crabbe, Brown, Jones, Potts & Schmidt, William H. Jones* and *John C. Albert,* for appellee and appellant.

*Paul O. Scott* and *Diane Politi,* for appellants and appellees.

WHITESIDE, Judge.

By its appeal in case No. 90AP–630, plaintiff, Nationwide Mutual Insurance Company, appeals from a judgment of the Franklin County Court of Common Pleas and raises two assignments of error as follows:

"I. The lower court erred in holding that Brenton I. Chivington was entitled to underinsured motorist coverage under the Nationwide Century II auto policy.

"II. The lower court erred in finding coverage for Brenton I. Chivington under the Nationwide Century II auto policy because it will allow Brenton I. Chivington to recover twice for his claim."

In the connected appeal, 90AP–589, defendants, Brenton and David Chivington, appeal from the same judgment of the Franklin County Court of Common Pleas and raise three assignments of error as follows:

"I. The trial court erred by finding that Brenton Chivington's personal umbrella policy did not include underinsurance because such insurance exists through operation of law.

"II. The trial court erred by finding that Brenton Chivington's personal umbrella insurance policy provided coverage only for damage caused by an insured.

"III. The trial court erred by failing to find that there was no express rejection of underinsured motorist coverage as is required by Ohio Revised Code Section 3937.18."

Inasmuch as the two appeals, although raising different issues, arise from the same trial court case, we will decide them together in a single opinion.

The parents of defendants, who are brothers, were killed as a result of an automobile accident resulting from the negligence of a motorist who carried liability insurance coverage with plaintiff but with limits of $100,000 per person and $300,000 per occurrence. Plaintiff paid the estates of the decedents $200,000 under this policy. The decedents had an automobile liability insurance policy with another company with limits of $300,000 for underinsured motorist coverage. The other carrier paid $100,000 under that policy, making the total payment received by the estate as a result of the death of the decedents $300,000. Defendant Brenton Chivington has his own separate insurance policy with plaintiff which was in effect at the time of the accident.

It is his claim for underinsured motorist coverage under his own policy that gives rise to this action. The underinsured motorist limit of his automobile liability insurance policy is $500,000. In addition, Brenton Chivington has a personal umbrella policy with plaintiff with a limit of $1,000,000. Defendants seek recovery under the underinsured motorist coverage of both policies.

Both plaintiff and defendants filed motions for summary judgment with the trial court. The trial court sustained defendants' motion for summary judgment, finding that defendant Brenton Chivington was entitled to underinsurance coverage under his automobile liability policy with underinsured motorist limit of $500,000, from which should be set off the $300,000 already received by the estates of the decedents under other policies. It is from this decision that plaintiff appeals. The trial court further found that defendant Brenton Chivington was entitled to no underinsured motorist coverage under his personal umbrella policy with plaintiff because of the policy terms and definitions. It is from this decision that defendants appeal.

■ We will first consider the appeal of plaintiff in case No. 90AP–630. At the outset, it must be borne in mind that we are here dealing not with uninsured motorist coverage but with underinsured motorist coverage, which differs substantially, although in many policies confusion is created by attempting to utilize the same terms for both. Underinsured motorist coverage provides insurance to the extent that the policy limits exceed the amount of insurance carried by a tortfeasor who has negligently operated a vehicle so as to cause damages to the insured. One of the issues involved herein is the nature and extent of damages to which such coverage applies. That is the issue raised by plaintiff's first assignment of error.

■ Plaintiff's contention is essentially that there is no underinsured motorist coverage available because the decedents, defendants' parents, were not insureds under such policy. Plaintiff's policy is one of those which by endorsement amended the basic policy to include underinsured motorist coverage by a statement which states in pertinent part only that "an uninsured motor vehicle includes an underinsured motor vehicle." Other than to define underinsured motor vehicle, no distinction is made between the two coverages and, accordingly, we must look to the uninsured motorist provisions of the policy.

Both coverages are mandated by law, namely, R.C. 3937.18. The coverage afforded is set forth in an earlier amendatory endorsement to the policy, which states:

"We will pay bodily injury (meaning bodily injury, sickness, disease, or death) damages that are due you by law from the owner or driver of an uninsured motor vehicle. * * *"

The Ohio Supreme Court has expressly answered the question raised herein. In *Sexton v. State Farm Mut. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, the Supreme Court expressly held that a derivative claim resulting from the wrongful death of another is covered by the uninsured motorist coverage of an insurance policy, despite language in the policy attempting to avoid such coverage. The court declared such a limitation to be contrary to the uninsured motorist coverage mandated by R.C. 3937.18(A), which requires an automobile liability policy to provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." We have recently rejected a contention similar to that of plaintiff with respect to uninsured motorist coverage in *Barr v. Ins. Co. of N. Am.* (1991), 72 Ohio App.3d 595, 595 N.E.2d 531.

As indicated above, the language of the policy herein does not expressly limit coverage, as did the policy in *Sexton,* which limited uninsured motorist coverage to damages "because of bodily injury sustained by the insured." The instant policy provides for coverage with respect to "bodily injury damages that are due you by law." This necessarily extends coverage beyond bodily injury sustained by the insured himself and, thus, is consistent with R.C. 3937.18(A) and with *Sexton.* Although *Sexton* involved uninsured motorist coverage, and we are here concerned with underinsured motorist coverage, we find no distinction necessary, especially inasmuch as the policy in question provides to the effect that underinsured motorist coverage shall be the same as uninsured motorist coverage. Although plaintiff contends that, pursuant to *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 545 N.E.2d 83, we must look to the entire policy to determine the meaning of a particular provision, doing so does not vary the result nor can it in light of the holding in *Sexton,* which holds that R.C. 3937.18(A) mandates coverage of derivative claims under uninsured motorist coverage. See *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 48, 521 N.E.2d 789, 792.

Accordingly, we find that the common pleas court did not err in finding that underinsured motorist coverage is available under the automobile liability policy issued by plaintiff to defendants with respect to defendants' claim for the wrongful death of their parents. The first assignment of error is not well taken.

■ By the second assignment of error, plaintiff contends that, to allow coverage here would result in defendants' receiving double recovery. First, we consider plaintiff's contention that recovery should be limited to out-of-pocket expenses such as were involved in *Sexton*. However, the *Sexton* court held to the effect that damages recoverable in a wrongful death action are covered by uninsured motorist coverage. At that time, such damages were limited to those which compensated for the pecuniary injury resulting from the death. R.C. 2125.02 has since been amended to expand the damages recoverable in a wrongful death action. We find no reasonable basis for refusing to follow the mandate of *Sexton* merely because of the amendment to R.C. 2125.02, which expanded the damages recoverable.

■ It is somewhat difficult to understand the foundation for plaintiff's contention that there will be double recovery. The trial court expressly found that the $300,000 previously received from other policies must be deducted from the $500,000 underinsured motorist coverage afforded by plaintiff's automobile liability policy, which would leave only $200,000 coverage payable only to the extent that it be proved that the damages exceed $300,000.

Plaintiffs rely upon the unreported decision in *Hill v. State Farm Mut. Auto. Ins. Co.* (Nov. 10, 1988), Lucas App. No. L–87–382, unreported, 1988 WL 121287. Although the *Hill* court did discuss *Sexton*, it made no finding inconsistent therewith, but, instead, the finding as to the meaning of *Sexton* is consistent with our opinion herein. However, the *Hill* case involved uninsured motorist coverage, and the court found that, since there was already coverage under another policy, no further uninsured motorist coverage was available. This case, however, does not involve uninsured motorist coverage, but, instead, involves underinsured motorist coverage, which by its very nature recognizes that there will be recovery under another policy, even that of the tortfeasor, before there is coverage under the underinsured motorist coverage provisions. This important distinction between uninsured and underinsured motorist coverage makes the *Hill* case inapplicable herein.

Defendants rely upon the case of *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, which plaintiff attempts to distinguish on the basis that the bodily injury in *Wood* was to the insured under the policy. This is essentially the distinction which *Sexton* rejected and which we have discussed above. Furthermore, *Wood* was recently reaffirmed and followed in *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St.3d 162, 556 N.E.2d 1150, which reconsidered an earlier decision in *Cincinnati Ins. Co. v. Phillips* (1989), 44 Ohio St.3d 163, 541 N.E.2d 1050, which case involved liability rather than underinsured motorist coverage.

In addition, *Wood* was distinguished and explained in *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, which specifically held that there is no underinsured motorist liability insurance available where the limits of liability in the insured's policy are identical to the limits of the tortfeasor's policy, a situation which is not present here. In none of these cases did the Supreme Court modify the rule of *Sexton, supra.* The rule of *Wood, Hill,* and *Cincinnati Ins. Co.* is not applicable here since these cases involve a question of whether individual or aggregate coverage is applicable under given facts. No such issue is presented here. Accordingly, we find that no double recovery is involved, and the trial court did not order double coverage under the circumstances herein but, instead, only full coverage for all damages recoverable by defendants to the extent of the policy limits. Accordingly, plaintiff's second assignment of error is not well taken.

■ We now turn to defendants' assignments of error in case No. 90AP–589 involving the trial court's determination that no underinsured motorist coverage is available under the umbrella policy issued to defendant Brenton Chivington. The personal umbrella policy in question is an excess coverage policy over other policies issued by plaintiff to defendant Brenton Chivington, including the automobile liability policy which is the subject of plaintiff's appeal. The exclusion portion of the umbrella policy states in pertinent part:

"Excess liability and additional coverages do not apply to:
" * * *

"(12) bodily injury or property damage an insured is entitled to recover from an uninsured or underinsured motorist unless: insurance is specifically provided by an endorsement to this policy."

R.C. 3937.18(A) provides in pertinent part that:

"No automobile liability or motor vehicle liability policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following are provided:

"(1) Uninsured motorist coverage * * *

"(2) Underinsured motorist coverage * * *."

R.C. 3937.18(C) does provide that the named insured may reject the coverage, which must be in the same amount as the limits of liability unless a lesser amount is agreed to by the named insured. This court has recently held that the requirement of R.C. 3937.18 that a policy provide uninsured and underinsured motorist coverage applies to an umbrella policy providing excess coverage. *Harrison v. Aetna Cas. & Sur. Co.* (Apr. 24, 1990), No. 89AP–1509, unreported, 1990 WL 52528. We adopted *Cincinnati Ins. Co. v. Siemens* (1984), 16 Ohio App.3d 129, 16 OBR 137, 474 N.E.2d 655, and cited *Duriak v. Globe American Cas. Co.* (1986), 28 Ohio St.3d 70, 28 OBR 168, 502 N.E.2d

620, and *House v. State Auto. Mut. Ins. Co.* (1988), 44 Ohio App.3d 12, 540 N.E.2d 738. We find no reason to reach a different result herein and, accordingly, hold that there is underinsured motorist coverage provided under plaintiff's umbrella policy issued to defendant Brenton Chivington despite the language therein requiring an endorsement for such coverage unless he expressly rejected such coverage. Defendants' first and second assignments of error are well-taken.

■ Plaintiff does contend that defendant Brenton Chivington rejected the coverage, relying upon the insurance application which apparently contains a check mark upon a printed statement that uninsured and underinsured motorist coverage was offered. However, the application contains no check mark on a preprinted statement: "I do not want Uninsured/Underinsured Motorist Coverage." Since the rejection is not checked on the application, it affords no basis for finding as a matter of law that coverage was rejected. Plaintiff's essential argument is that, since the application indicates defendant Brenton Chivington knew of uninsured and underinsured motorist coverage, he must have rejected it because he did not complain when the policy was issued without such coverage. We find no merit to such contention. This action was determined upon summary judgment, and all factual issues must be construed most strongly in favor of defendants while plaintiff's motion is being considered. At best, the contention made by plaintiff with respect to the application creates an issue of fact as to whether defendant Brenton Chivington rejected uninsured and underinsured motorist coverage. It most certainly does not establish such rejection as a matter of law as contended by plaintiff. Accordingly, the trial court erred in granting summary judgment for plaintiff upon defendants' claim that underinsured motorist coverage was covered under the umbrella policy. Defendants' third assignment of error is well taken.

For the foregoing reasons, defendants' assignments of error in case No. 90AP–589 are sustained; plaintiff's assignments of error in case No. 90AP–630 are overruled; the judgment of the trial court is affirmed with respect to those issues raised in case No. 90AP–630, namely, the automobile liability insurance policy issued by plaintiff, and is reversed with respect to the issues raised in case No. 90AP–589, with respect to the personal umbrella policy issued by plaintiff; and this cause is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and PEGGY BRYANT, JJ., concur.