PONSER, ADMR., ET AL., APPELLEES, *v*. ST. PAUL FIRE & MARINE INSURANCE

COMPANY ET AL.; MOTORISTS MUTUAL INSURANCE COMPANY ET AL.,

APPELLANTS.

[Cite as *Ponser v. St. Paul Fire & Marine Ins. Co.*,

104 Ohio St.3d 621, 2004-Ohio-7105.]

*Insureds' failure to file wrongful-death actions against an uninsured tortfeasor does not affect the insureds' ability to recover uninsured-motorist benefits under their policies of insurance, when.*

(Nos. 2003-1730 and 2003-2125 — Submitted September 29, 2004 — Decided

December 30, 2004.)

APPEAL from and CERTIFIED by the Court of Appeals for Licking County, No.

2002CA00072, 2003-Ohio-4377.

_____

PFEIFER, J.

Factual and Procedural Background

{¶ 1} Wanda Chenault died on June 10, 1999, in an automobile accident caused by Charles Hofer, who had driven left of center and struck Chenault's vehicle. It is undisputed that Hofer's negligence caused the accident. Hofer had no automobile insurance coverage in effect at the time of the accident. Chenault's insurer, Grange Insurance Company, paid the limits of Chenault's uninsured-motorist coverage, $25,000, to Chenault's estate.

{¶ 2} Chenault's relatives sought recovery under the uninsured-motorist provisions of their own policies. Defendant-appellant Motorists Mutual Insurance Company ("Motorists") had issued automobile-insurance policies, which were in effect at the time of the accident, to plaintiff-appellee Marilyn Ponser, Chenault's mother, and plaintiffs-appellees Verlin and Freda Mathis, Chenault's maternal

grandparents. Defendant-appellant Nationwide Insurance Company ("Nationwide") had issued an automobile-insurance policy to plaintiff-appellee Jeanette Romine, Chenault's maternal aunt.

{¶ 3} Regarding uninsured-motorist coverage, the Motorists Mutual policies state:

{¶ 4} "A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of:

{¶ 5} "1. An uninsured motor vehicle * * *."

{¶ 6} The duties of the insured after an accident or loss are set forth as follows in the Motorists policies:

{¶ 7} "PART E — DUTIES AFTER AN ACCIDENT OR LOSS

{¶ 8} "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

{¶ 9} "A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

{¶ 10} "* * *

{¶ 11} "C. A person seeking Uninsured Motorist Coverage must also:

{¶ 12} "1. Promptly notify the police if a hit and run driver is involved.

{¶ 13} "2. Promptly send us copies of the legal papers if a suit is brought."

{¶ 14} The Nationwide policy provides uninsured-motorists coverage as follows:

{¶ 15} "We will pay compensatory damages as a result of bodily injury suffered by you or a relative and due by law from the owner or driver of an uninsured motor vehicle."

{¶ 16} The duties of an insured under the Nationwide policy include the following:

{¶ 17} "1. The insured must:

{¶ 18} "a) submit written proof of the claim to us. * * *

{¶ 19} "* * *

{¶ 20} "2. After notice of claim, we may require the insured to take legal action against any liable party.

{¶ 21} "3. An insured may bring legal action against the other party for bodily injury. A copy of any paper served in this action must be sent to us at once.

{¶ 22} "4. The insured must:

{¶ 23} "a) obtain our written consent to:

{¶ 24} "(1) settle any legal action brought against any liable party; or

{¶ 25} "(2) release any liable party.

{¶ 26} "b) preserve and protect our right to subrogate against any liable party."

{¶ 27} By letters dated June 5, 2000, appellees informed their insurance carriers that they were making uninsured-motorist claims for injuries arising out of Chenault's accident. In the letters that Ponser and the Mathises sent to Motorists (Romine's letter to Nationwide is not part of the record), they related that no recovery could be had against Hofer: "Mr. Hofer had no liability insurance policy in effect on the date of the accident, and otherwise has no assets which are available for garnishment." None of the appellees filed a claim against Hofer within the two-year statute of limitations for wrongful-death actions.

{¶ 28} Appellees received no payments from their insurers on their claims, and on June 7, 2001, they filed complaints against their respective insurers: Marilyn Ponser and Verlin and Freda Mathis brought claims against Motorists, and Jeanette Romine filed a complaint against Nationwide. The trial court consolidated the cases on January 9, 2002.

{¶ 29} On April 2, 2002, Nationwide moved for summary judgment, arguing, "[B]ecause [Romine] is no longer legally entitled to recover [from] the

tortfeasor Charles Hofer since a lawsuit was not filed against Hofer within the applicable two-year statute of limitations, [she] is unable to recover under the uninsured motorist portion of her policy." On April 8, 2002, Motorists moved for summary judgment, making the same argument as to the claims of Ponser and the Mathises.

{¶ 30} The trial court granted summary judgment to Nationwide and Motorists on June 24, 2002. The court held:

{¶ 31} "By not including Mr. Hofer as a tortfeasor, or separately filing suit against Mr. Hofer prior to June 10, 2001, the Plaintiffs have failed to fulfill a substantive element of their wrongful death causes of action, and those causes of action extinguished on June 10, 2001. Accordingly, Plaintiffs are not legally entitled to recover damages from the tortfeasor, and therefore are precluded by law from receiving UM benefits under the policies, and under R.C. 3937.18."

{¶ 32} The court of appeals reversed the trial court's judgment. The appellate court found that the phrase "legally entitled to recover damages" in R.C. 3937.18(A) is ambiguous "since the statute does not specify at what point in time the determination of whether an insured is legally entitled to recover damages from the owner or operator of an uninsured vehicle is to be made." The court found that the statute is susceptible to an interpretation that the determination is to be made at the time of the accident. The court found that on the date of the accident, the appellees could prove both liability and damages. The court concluded:

{¶ 33} "Because of ambiguity in the statute as to when the insured must be 'legally entitled to recover,' and because R.C. 3937.18 is a remedial statute to be liberally construed to give effect to the remedy it provides," failing to sue Hofer within two years of the accident did not serve as a basis to deny uninsured motorist coverage.

{¶ 34} The court of appeals also found that the Motorists policies' requirement that the insured be "legally entitled to recover" was ambiguous and that the ambiguity must be construed in favor of the policyholder. The court again found that under one interpretation of the policy, the insureds' claims accrued when Chenault died, at which point appellees had been able to demonstrate their claims against the tortfeasor and therefore had been "legally entitled to recover." The court found that the same reasoning applied to the Nationwide policy's requirement that the insured's damages be "due by law from the owner or driver."

{¶ 35} The appellate court granted a motion to certify a conflict, finding its judgment to be in conflict with the judgments of the Fourth District Court of Appeals in *Hutchison v. Midwestern Indemn. Co.* (Aug. 5, 1987), 4th Dist. No. 1352, 1987 WL 15488, and *Hutchison v. Midwestern Indemn. Co.* (Mar. 2, 1989), 4th Dist. No. 1496, 1989 WL 19380, and the judgments of the Eighth District Court of Appeals in *McDonald v. State Farm Mut. Auto. Ins. Co.* (Aug. 10, 2000), 8th Dist. No. 76808, 2000 WL 1144972, and *Bielefeld v. State Farm Mut. Ins. Co.* (Nov. 3, 1994), 8th Dist. No. 67093, 1994 WL 614991.

{¶ 36} In case No. 2003-2125, this court determined that a conflict exists over the following question:

{¶ 37} "If an insured does not file a wrongful death suit against the tortfeasor with[in] the two year statute of limitations set forth in R.C. 2125.02(D), is he or she 'legally entitled to recover damages' against the tortfeasor under R.C. 3937.18 and, therefore, able to maintain an un[der]insured or uninsured motorists claim?" 101 Ohio St.3d 214, 2004-Ohio-714, 803 N.E.2d 814.

{¶ 38} This court also granted jurisdiction pursuant to the acceptance of a discretionary appeal (case No. 2003-1730) and consolidated the two appeals.

Law and Analysis

{¶ 39} We hold that the answer to the certified-conflict question is relevant to this case only if the contracts between the parties do not themselves address the issue of the necessity of the insureds' filing suit against the tortfeasor. We find that the contracts at issue in this case make filing a lawsuit nonmandatory, thus obviating any need for this court to interpret R.C. 3937.18.

{¶ 40} R.C. 3937.18, as it existed when the contracts of insurance were entered into, required insurers to offer their insureds uninsured-motorist coverage. Former R.C. 3937.18 stated:

{¶ 41} "(A) No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:

{¶ 42} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.

{¶ 43} "For purposes of division (A)(1) of this section, *an insured is legally entitled to recover damages if the insured is able to prove the elements of the insured's claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle.*" (Emphasis added.) 147 Ohio Laws, Part II, 2372-2373.

{¶ 44} Former R.C. 3937.18 set forth the minimum uninsured-motorist coverage that insurers had to offer their insureds. Nothing in former R.C. 3937.18 prohibited parties from contracting for more liberal coverage than that set forth in

the statute. Nor did the statute set forth what an insured must do to recover under a particular policy. The statute ensured only that uninsured-motorist coverage was offered to insureds. Although former R.C. 3937.18 makes some contract terms expressly legal if agreed to by the parties, it does not set forth the terms between the parties. Those terms are set forth in the individual contracts between insurers and insureds, and those contracts are where we look to resolve this case.

{¶ 45} Under its policies, Motorists agreed to "pay compensatory damages which an insured is *legally entitled to recover* from the owner or operator of * * * [a]n uninsured motor vehicle." (Emphasis added.)

{¶ 46} Nationwide agrees in its policy to "pay compensatory damages as a result of bodily injury suffered by [the insured] or a relative and *due by law* from the owner or driver of an uninsured motor vehicle." (Emphasis added.)

{¶ 47} We find no meaningful distinction between the "legally entitled to recover" language of the Motorists policies and the "due by law" language of the Nationwide policy. We will evaluate the contracts the same way. In neither case must we resort to former R.C. 3937.18 to determine the intent of the parties. Parties' intent "is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to other evidence of parties' intent "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." Id. at 132, 31 OBR 289, 509 N.E.2d 411.

{¶ 48} To determine whether an insured must file a wrongful-death action within the statute of limitations in order to meet the contract requirement of being legally entitled to recover, we need look only to the contracts. All three contracts set forth roadmaps for recovery, the steps an insured must follow to ensure coverage. Appellants failed to include the filing of a lawsuit against the tortfeasor among the mandatory duties of an insured. Additionally, the policies employ

language establishing that the filing of suit against the tortfeasor is done at the insured's discretion or at the insurer's request, contradicting any claim that filing a lawsuit is required in order to be "legally entitled to recover" and thus mandatory for recovery.

{¶ 49} The Motorists policies are clear about what an insured "must" do, including giving prompt notice of "how, when and where the accident or loss happened." The Motorists policies also require a person seeking uninsured-motorist coverage to "promptly send [Motorists] copies of the legal papers if a suit is brought." (Emphasis added.) Sending copies of legal papers is mandatory, but bringing a suit is not.

{¶ 50} Similarly, the Nationwide policy states that an insured "must" submit a proof of claim. Filing a claim against the tortfeasor, however, is discretionary, to be done at the option of the insured or Nationwide. The policy provides that "[a]fter notice of claim, we *may* require the insured to take legal action against any liable party" and that "[a]n insured *may* bring legal action against the other party for bodily injury." (Emphasis added.)

{¶ 51} Nothing in either policy alerts an insured that he must file suit to recover benefits under his uninsured-motorist coverage. Moreover, neither company, despite their knowledge of appellees' claims, requested that any appellee file suit against Hofer.

{¶ 52} The issue of whether an insured must file a lawsuit against the tortfeasor is dealt with clearly within the contracts and thus is not reliant on this court's interpretation of the "legally entitled to recover" language of former R.C. 3937.18(A)(1). Each policy sets forth what an insured must do to recover under the policy, and filing suit against a tortfeasor is not among the listed duties. Even if we were to determine that filing a lawsuit against the tortfeasor is included in the meaning of the phrase "legally entitled to recover" in former R.C. 3937.18, that meaning would not control over the express meaning of the language in the

8

contracts. Under the contracts, filing a lawsuit against the tortfeasor is not mandatory. Thus, to prove that they are legally entitled to recover, the insureds must establish fault on the part of the uninsured motorist and the extent of their damages.

{¶ 53} We agree with the court of appeals that there is no evidence that the appellees breached the subrogation provisions in their respective policies. The insureds informed the insurers within a year of the accident that they had suffered damages from an uninsured tortfeasor. A February 27, 2001 letter from Motorists (i.e., within the two-year statute of limitations) reflects that its delay in settling its insureds' claims was not due in any part to a concern that the insureds were not preserving Motorists' subrogation rights against Hofer but to the possible presence of other insurance in the case as a result of a so-called Scott-Pontzer claim being brought by Chenault's estate. See *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.

{¶ 54} We note, however, that when an uninsured tortfeasor is not judgment-proof, an insurers' contractual subrogation rights would be harmed by the failure of an insured to bring a wrongful-death claim against the tortfeasor. Nationwide claims that affirming the court of appeals would allow an insured, "by his or her own activity or inactivity, to thwart the carriers' subrogation rights against a tortfeasor" and would "bring[ ] Ohio ever closer to a no fault state despite the fact that the legislature has clearly not done so." Motorists writes that an affirmance "would permit insureds to abandon their claims against the wrongdoer and proceed directly against their [uninsured-motorist] carrier" and that "the scope of all [uninsured-motorist] coverage would be altered such that it would be converted from a third-party coverage, requiring liability on behalf of the alleged tortfeasor to be proven, to a first party coverage much like health insurance."

**{¶ 55}** However, our decision in *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, remains a roadblock to any parade of horribles envisioned by appellants. As we held in paragraph two of the syllabus of that case:

**{¶ 56}** "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary."

**{¶ 57}** Thus, the contractual right to subrogation still protects insurers. Here, the insurers denied coverage, not because valuable subrogation rights had been materially affected, but because appellees had failed to perform a ministerial act of no practical value. Appellees' failure to file suit against Hofer had no substantive effect on the insurers. The contracts are written such that only a prejudicial lapse by an insured can result in a denial of coverage. The insurers here were on notice of appellees' claims for a year, and waited while the clock ticked on the statute of limitations for a fruitless cause of action against a destitute tortfeasor. Appellants seek a result that elevates form over substance. But here, even the form, the insurance contract, does not support them.

**{¶ 58}** We conclude that appellees' failure to file a wrongful-death action against the uninsured tortfeasor in this case does not affect appellees' ability to recover uninsured-motorist benefits pursuant to their insurance contracts.

**{¶ 59}** Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and CUPP, JJ., concur.

MOYER, C.J., concurs in judgment only.

10

ROBERT L. CUPP, J., of the Third Appellate District, sitting for O'DONNELL, J.

_____

Morrow, Gordon & Byrd, Ltd., and Adam K. Vernau, for appellees.

Keener, Doucher, Curley & Patterson, L.P.A., W. Charles Curley and Jenifer J. Murphy, for appellant Motorists Mutual Insurance Company.

Gary L. Grubler, for appellant Nationwide Insurance Company.

Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Daniel A. Richards and Warren Rosman, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Davis & Young and Richard M. Garner, urging reversal for amicus curiae Westfield Insurance Company.

_____