**[Cite as *Barnett v. Johnson*, 2024-Ohio-3254.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Shekinah Barnett, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 23AP-538 |
| v. | : | (C.P.C. No. 19CV-2897) |
| Kindra Johnson et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 27, 2024

**On brief:** *Walton + Brown, LLP*, and *Chanda L. Brown*, for appellant. **Argued:** *Chanda L. Brown*.

**On brief:** *Bricker Graydon LLP*, and *Jeffrey P. McSherry*, for appellee Nationwide Insurance Company of Ohio. **Argued:** *Jeffrey P. McSherry*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Shekinah Barnett, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Nationwide Insurance Company of America ("Nationwide"), on Barnett's claims for uninsured motorist compensation. For the following reasons, we reverse in part.

## I. Facts and Procedural History

{¶ 2} This appeal arises from Barnett's claims seeking uninsured motorist coverage under automobile insurance policies issued by Nationwide. Barnett's claims related to automobile collisions that occurred on January 30, 2015 ("the January 2015 collision"),

March 13, 2015 ("the March 2015 collision"), January 12, 2019 ("the January 2019 collision"), and February 27, 2020 ("the February 2020 collision"). At the time of each collision, Barnett was insured under policies issued by Nationwide that included uninsured and underinsured motorist coverage.

{¶ 3} Barnett initially filed suit on January 11, 2017, in Franklin C.P. No. 17CV-322, against Nationwide, Kindra Johnson, Dione Strickland, Linda Fernan, and John Doe defendants. Barnett asserted that Johnson caused the January 2015 collision by negligently operating her automobile, while acting as agent and employee of Strickland and a John Doe defendant. Barnett asserted that Fernan caused the March 2015 collision by negligently operating her automobile, while acting as agent and employee of a John Doe defendant. Barnett further alleged that Johnson, Strickland, and Fernan were uninsured and asserted a claim against Nationwide for compensation under her uninsured motorist coverage. Nationwide filed an answer to the complaint and cross-claims against Johnson, Strickland, and Fernan for indemnity, contribution, or subrogation.

{¶ 4} Barnett's complaint was served on Fernan by certified mail at the Dans Avenue address in Columbus, Ohio on January 17, 2017. Nationwide's cross-claim was served on Fernan by certified mail at the same address on February 8, 2017. Fernan did not file an answer to the complaint or to Nationwide's cross-claim. On April 8, 2018, Barnett voluntarily dismissed her complaint in case No. 17CV-322 pursuant to Civ.R. 41(A).

{¶ 5} On April 6, 2019, Barnett re-filed her claims against Nationwide, Johnson, Strickland, Fernan, and John Doe defendants in Franklin C.P. No. 19CV-2897. As in her prior filing, Barnett asserted that Johnson caused the January 2015 collision by negligently operating her automobile, while acting as agent and employee of Strickland and a John Doe defendant. Barnett also asserted that Fernan caused the March 2015 collision by negligently operating her automobile, while acting as agent and employee of a John Doe defendant. Barnett further alleged that Johnson, Strickland, and Fernan were uninsured and asserted a claim against Nationwide for compensation under her uninsured motorist coverage. The complaint was sent to Fernan by certified mail at the Dans Avenue address in Columbus on April 9, 2019; that certified mail was returned unclaimed on May 14, 2019.

{¶ 6} Nationwide filed an answer to the complaint and cross-claims against Johnson, Strickland, and Fernan for indemnity, contribution, or subrogation.

Nationwide's cross-claim was sent to Fernan by certified mail at the Dans Avenue address in Columbus on May 7, 2019. The trial court docket contains no record of delivery or unsuccessful return of the certified mail to Fernan containing Nationwide's cross-claim.

{¶ 7} On July 6, 2020, Nationwide moved to dismiss the complaint, asserting Barnett failed to state a claim upon which relief could be granted and failed to obtain service on Strickland and Johnson within one year of filing the complaint. Barnett then moved to amend her complaint to add claims related to the January 2019 collision and the February 2020 collision.

{¶ 8} The trial court denied Nationwide's motion to dismiss, concluding the record was insufficiently developed to determine whether Barnett could prove that the other drivers were at fault and noting that Barnett's insurance policies were not part of the record. The court also granted Barnett's motion to amend her complaint.

{¶ 9} Barnett's amended complaint included all the claims asserted in her April 6, 2019 filing along with new claims related to the January 2019 collision and the February 2020 collision. In the amended complaint, Barnett asserted that Daren Cofield and a John Doe defendant caused the January 2019 collision by negligently operating an automobile, and fled the scene following the collision. Barnett also asserted that Leon Cato caused the February 2020 collision by negligently operating his automobile. The amended complaint also included a claim against Nationwide asserting a breach of the duty of good faith and fair dealing by making a bad faith offer in response to Barnett's claim for compensatory damages.

{¶ 10} The amended complaint was sent to Fernan by certified mail at the Dans Avenue address on August 20, 2020; the certified mail was returned on October 18, 2020 marked as "attempted not known" and "unable to forward." (Oct. 19, 2020 Service Failed.)

{¶ 11} Nationwide filed an answer to the amended complaint but did not file additional cross-claims related to the January 2019 collision and the February 2020 collision.

{¶ 12} In March 2021, Barnett voluntarily dismissed her claims against Cofield related to the January 2019 collision without prejudice. In April 2021, Johnson and Strickland moved to dismiss Barnett's claims against them pursuant to Civ.R. 12(B)(6) for failure to obtain service on them within one year of filing the complaint. Then in May 2021,

Nationwide moved for summary judgment on the amended complaint, arguing that Barnett's claims against Johnson, Strickland, and Fernan related to the January 2015 collision and the March 2015 collision were barred due to failure to obtain service within one year of filing the complaint. Nationwide asserted that the failure to timely serve Johnson, Strickland, and Fernan prejudiced its subrogation rights against those parties, and that under the terms of the relevant insurance policies, Barnett was not entitled to uninsured motorist compensation due to the failure to protect Nationwide's subrogation rights. Nationwide further asserted that any claims related to the January 2019 collision were rendered moot by Barnett's voluntary dismissal of her claims against Cofield. Nationwide argued that Barnett was not entitled to uninsured or underinsured motorist coverage for the February 2020 collision because Cato, the alleged tortfeasor in that incident, had insurance coverage.

{¶ 13} Barnett filed a memorandum in opposition to Johnson and Strickland's motion to dismiss and Nationwide's motion for summary judgment, arguing the trial court had previously determined that the action had been commenced. Barnett also asserted that Johnson had been served in September 2020, and that service was not required against Fernan because she was uninsured at the time of the March 2015 collision and had no known assets. Barnett also requested an extension of time to perfect service against the remaining parties.

{¶ 14} In May 2022, Barnett voluntarily dismissed her claims against Cato related to the February 2020 collision with prejudice.

{¶ 15} In October 2022, the trial court issued a judgment granting Johnson and Strickland's motion to dismiss and Nationwide's motion for summary judgment. With respect to the claims against Johnson and Strickland, the trial court found that Barnett's complaint was timely filed in case No. 19CV-2897 because it was filed within one year of the voluntary dismissal of case No. 17CV-322. However, the court found that case No. 19CV-2897 was not commenced against Johnson and Strickland because Barnett failed to obtain service on either of them within one year of filing the complaint. Therefore, the trial court reasoned, Barnett's claims against Johnson and Strickland were barred by the statute of limitations. The trial court also found that Fernan had not been served with the complaint or amended complaint in case No. 19CV-2897 and ordered Barnett to show cause

why her claims against Fernan should not be dismissed. The trial court further concluded Nationwide was entitled to summary judgment because Barnett's failure to perfect service within one year on Johnson, Strickland, and Fernan prejudiced Nationwide's subrogation rights.

{¶ 16} In response to the order to show cause, Barnett filed a memorandum arguing that Fernan appeared to be judgment proof because she had no insurance at the time of the March 2015 collision and had no verifiable assets. Barnett also asserted that her insurance policy did not require her to file suit against Fernan to obtain uninsured motorist benefits and that Nationwide failed to take the necessary steps to protect any subrogation rights it had against Fernan. Barnett also moved for leave to perfect service on Fernan. In August 2023, the trial court issued a judgment denying Barnett's motion for leave to perfect service and dismissed Barnett's sole remaining claim against Fernan with prejudice.

## II. Assignment of Error

{¶ 17} Barnett appeals and assigns the following sole assignment of error for our review:

> The trial court erred when it granted the motion for summary judgment filed by Nationwide Insurance.

## III. Discussion

### A. Standard of Review

{¶ 18} We review a decision granting summary judgment de novo, conducting an independent review of the record and affording no deference to the trial court's decision. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio* at ¶ 6.

{¶ 19} Under Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying the portions

of the record demonstrating the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment.  If the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds with specific facts demonstrating that a genuine issue exists for trial.  *Id.*

**B. Analysis**

{¶ 20} Barnett's brief on appeal only challenges the trial court's grant of summary judgment in favor of Nationwide on her claims for uninsured motorist coverage related to the March 2015 collision and the January 2019 collision.  Accordingly, we will limit our review to those claims.

**1. Whether failure to timely serve Fernan and voluntary dismissal of Cofield necessarily barred Barnett's claims against Nationwide**

{¶ 21} In its motion for summary judgment and its brief on appeal, Nationwide asserts that Barnett's failure to perfect service on Fernan bars her uninsured motorist claim against Nationwide for the March 2015 collision, citing the Supreme Court of Ohio's decision in *Moore v. Mt. Carmel Health Sys.*, 162 Ohio St.3d 106, 2020-Ohio-4113.  Nationwide similarly asserts Barnett's voluntary dismissal of Cofield bars her uninsured motorist claim against Nationwide for the January 2019 collision under *Moore*.  In effect, Nationwide argues that under *Moore* a failure to commence an action against an uninsured tortfeasor through timely service necessarily bars a claim for uninsured motorist coverage, notwithstanding proper timely service on the insurance company providing uninsured motorist coverage.  Although the trial court cited *Moore* in granting summary judgment for Nationwide, it rejected Nationwide's expansive reading of the *Moore* decision.  Because we find *Moore* to be factually distinguishable from this case, we also reject Nationwide's broad interpretation of the Supreme Court's decision.

{¶ 22} *Moore* involved a claim for medical malpractice against multiple defendants, including an anesthesiologist, the hospital where the procedure was performed, and the practice group that employed the anesthesiologist.  *Moore* at ¶ 3.  The plaintiff filed the complaint one day before the statute of limitations expired.  Timely service was obtained on the hospital and the practice group, but service on the anesthesiologist by certified mail was unsuccessful.  *Id.* at ¶ 5.  After the defendants had filed answers and motions for

summary judgment, the plaintiff requested personal service on the anesthesiologist and service was perfected more than one year after the complaint had been filed. *Id.* at ¶ 7. The trial court granted summary judgment in favor of all three defendants, concluding the claim against the anesthesiologist was barred by the statute of limitations because he was not timely served and the claims against the hospital and the practice group were barred because they were based on vicarious liability. *Id.* at ¶ 8. This court reversed, concluding the savings statute applied because the plaintiff's second request for service on the anesthesiologist constituted voluntary dismissal and refiling of a new action. *Id.* at ¶ 9.

{¶ 23} On appeal, the Supreme Court reversed this court's decision, concluding that the savings statute did not apply because the second request for service did not constitute a voluntary dismissal and refiling. *Id.* at ¶ 25-26, 36. The court reinstated the trial court's grant of summary judgment in favor of the anesthesiologist and the hospital, and remanded to this court to address remaining arguments about the liability of the practice group. *Id.* at ¶ 37. On remand, this court affirmed the trial court's decision as to the practice group, concluding that the plaintiff's claim against the practice group was based on vicarious liability. *Moore v. Mt. Carmel Health Sys.*, 10th Dist. No. 2017APE-10-754, 2020-Ohio-6695, ¶ 51. Because the plaintiff failed to timely serve the anesthesiologist, the vicarious liability claim against the practice group was barred. *Id.*

{¶ 24} *Moore*, 2020-Ohio-4113, did not require the court to apply the terms of an insurance policy. Additionally, the key distinction between *Moore*, 2020-Ohio 4113, and the present case is that the claims against the hospital and the practice group in *Moore* were based on vicarious liability. Once the direct-liability claim against the anesthesiologist failed due to lack of service, the vicarious-liability claims against the hospital and the practice group necessarily failed. The present case does not involve vicarious liability, however. As explained below, Barnett's insurance policies did not require her to file suit against an uninsured tortfeasor before seeking uninsured motorist coverage. Therefore, we reject Nationwide's contention that the decision in *Moore*, 2020-Ohio-4113, necessarily barred Barnett's claims.

## 2. Whether failure to timely serve Fernan breached the subrogation provisions and prejudiced Nationwide's subrogation rights

{¶ 25} The trial court concluded Nationwide was entitled to summary judgment on Barnett's claim for uninsured motorist coverage for the March 2015 collision because Barnett failed to perfect service on Fernan within one year of filing her complaint in case No. 19CV-2897. The trial court held that Nationwide's subrogation rights had been prejudiced by Barnett's failure to timely commence her claim against Fernan through proper service.

{¶ 26} The Supreme Court has held that "when an insurer's denial of [uninsured or underinsured motorist] coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights." *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, ¶ 88. The court further held that "[a]n insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." *Id.* Thus, the court created a two-step inquiry requiring an analysis of: (1) "whether a breach of the provision at issue actually occurred" and (2) "if a breach did occur, was the insurer prejudiced so that [uninsured or underinsured motorist] coverage must be forfeited?" *Id.* at ¶ 89. *See Triplett v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. No. 02AP-869, 2003-Ohio-4502, ¶ 15 (explaining two-stage inquiry under *Ferrando* decision).

{¶ 27} "Implicit within the *Ferrando* analysis is that the court must examine any allegedly breached provision that affects the insurer's subrogation rights." *Roddy v. Williamson*, 10th Dist. No. 16AP-195, 2016-Ohio-8437, ¶ 13. With respect to Barnett's uninsured motorist claim for the March 2015 collision, Nationwide asserts Barnett breached a clause in her insurance policy requiring her to do whatever was necessary to transfer subrogation rights to Nationwide and do nothing to prejudice Nationwide's subrogation rights. Citing *Nationwide Mut. Ins. Co. v. Zimmerman*, 5th Dist. No. 2004 CA 00007, 2004-Ohio-7115, and *Panta v. Cincinnati Ins. Co.*, 8th Dist. No. 81563, 2003-Ohio-762, the trial court concluded Nationwide was entitled to summary judgment because its subrogation rights were prejudiced by Barnett's failure to timely serve the complaint on Fernan.

{¶ 28} In *Zimmerman*, the Fifth District Court of Appeals concluded that an insurance company's subrogation claim was barred by the statute of limitations because the insured party voluntarily dismissed her underlying personal injury claim before the statute of limitations expired and could not have refiled that claim under the savings statute. *Zimmerman* at ¶ 21. Notably, the insured party in *Zimmerman* did not name her insurance company as a party to the personal injury claim. *Id*. at ¶ 4. After voluntarily dismissing the personal injury claim, the insured party ultimately entered into a settlement with the tortfeasor. *Id*. at ¶ 3. While the personal injury claim was pending, the insurance company advanced medical payments to the insured party, and after the settlement had been reached the insurance company paid underinsured motorist coverage to the insured party without consenting to settlement or waiving its subrogation rights. *Id*. at ¶ 4. The insurance company pursued a subrogation claim against the tortfeasor, but the trial court concluded the claim was barred by the statute of limitations. *Id*. at ¶ 6. Thus, the insurance company was effectively prohibited from pursuing subrogation against the tortfeasor.

{¶ 29} The Eighth District Court of Appeals concluded in *Panta* that an insurance policy subrogation provision had been breached when an injured party waited one and one-half years after the expiration of the two-year statute of limitations before asserting a claim against an unidentified tortfeasor. *Panta* at ¶ 42. The delay precluded the insurer from taking any action against the tortfeasor, thereby violating policy language requiring the insured to do everything necessary to secure the insurer's rights and nothing to impair those rights. *Id*. However, because the trial court had failed to consider the presumption of prejudice arising from the violation of the subrogation provision, the appellate court remanded the case for consideration of whether the insurance company was prejudiced. *Id*. at ¶ 43.

{¶ 30} Unlike the scenarios in *Zimmerman* and *Panta*, in this case Barnett filed her complaint in case No. 17CV-322 within the two-year statute of limitations for personal injury claims, with respect to the January 2015 collision. She also re-filed her complaint in case No. 19CV-2897 within one year of her earlier voluntary dismissal. In both cases, Barnett named Nationwide as a defendant and put Nationwide on notice of her claims.

{¶ 31} We find this case to be more analogous to *Ponser v. St. Paul Fire & Marine Ins. Co.*, 104 Ohio St.3d 621, 2004-Ohio-7105. In that case, an individual was killed in a

collision with an uninsured motorist and the decedent's insurance company paid the limits of her uninsured motorist coverage to her estate. *Ponser* at ¶ 1. Several of the decedent's relatives then sought recovery under uninsured motorist provisions of their own insurance policies, including policies issued by Nationwide. *Id.* at ¶ 2. The relatives informed their insurers of these claims; those notices stated that the tortfeasor was uninsured. *Id.* at ¶ 27. After receiving no compensation, the relatives filed suit against their insurers a few days before the second anniversary of the collision. However, none of the relatives filed suit against the tortfeasor within the two-year period after the collision. *Id.* at ¶ 27-28. The insurers moved for summary judgment, asserting that the relatives could not recover under their uninsured motorist coverage because they failed to file suit against the tortfeasor within the two-year statute of limitations for wrongful death claims. *Id.* at ¶ 29. The trial court granted summary judgment for the insurers, concluding the relatives were not "legally entitled to recover damages" from the other driver because they failed to file suit against him within the statute of limitations and therefore could not receive uninsured motorist benefits. *Id.* at ¶ 31. The appellate court reversed, concluding the phrase "legally entitled to recover damages" was ambiguous and that the relatives were "legally entitled to recover damages" because they could prove liability and damages as of the date of the collision. The appellate court further concluded that failure to sue the tortfeasor within the two-year statute of limitations did not serve as a basis to deny uninsured motorist coverage. *Id.* at ¶ 32-33.

{¶ 32} On appeal, the Supreme Court concluded that the relatives' insurance policies did not require them to file suit against a tortfeasor to be eligible for uninsured motorist coverage; rather, the policies "employ[ed] language establishing that the filing of suit against the tortfeasor is done at the insured's discretion or at the insurer's request." *Id.* at ¶ 48. The court further found the relatives had not breached the subrogation provisions in their insurance policies because they had "informed the insurers within a year of the accident that they had suffered damages from an uninsured tortfeasor." *Id.* at ¶ 53. The court noted that the relatives' failure to file suit against the tortfeasor "had no substantive effect on the insurers" and that the insurers "were on notice of appellees' claims for a year, and waited while the clock ticked on the statute of limitations for a fruitless cause of action against a destitute tortfeasor." *Id.* at ¶ 57. The court held the relatives' failure to file a

wrongful-death action against the tortfeasor did not affect their ability to recover uninsured motorist benefits under their insurance policies. *Id*. at ¶ 58.

{¶ 33} The relevant provisions of Barnett's insurance policy with Nationwide as of the March 2015 collision were nearly identical to those of the Nationwide policy examined by the *Ponser* court. Barnett's insurance policy included the following provisions regarding the insured's duties:

> 1. The insured must:
>
> a) submit written proof of the claim to us as soon as practicable.
>
> * * *
>
> 2. After we make payment under this coverage, we may require the insured to take legal action against any liable party.
>
> 3. An insured may bring legal action against the other party for bodily injury. A copy of any paper served in this action must be sent to us at once.
>
> 4. The insured must:
>
> a) obtain our written consent to:
>
> (1) settle any legal action brought against any liable party; or
>
> (2) release any liable party.
>
> b) preserve and protect our right to subrogate against any liable party.

(Emphasis sic.) (Nationwide Answer, Ex. A, Nationwide Auto Policy for Sept. 20, 2014 through Mar. 20, 2015 at U3.)

{¶ 34} Both Barnett's policy and the policy in *Ponser* provided that Nationwide *may* require the insured to take legal action against any liable party and that an insured *may* bring legal action against another party for bodily injury. Both policies also required the insured to preserve and protect Nationwide's subrogation rights. Thus, in this case, as in *Ponser*, Barnett's policy did not require her to bring suit against Fernan to recover uninsured motorist benefits related to the March 2015 collision. Also, similar to the insurers in *Ponser*, Nationwide was aware of its potential subrogation rights against Fernan

and failed to preserve those rights while waiting for the one-year period for service of Barnett's complaint in case No. 19CV-2897 to expire. Nationwide was on notice of its potential subrogation rights against Fernan no later than January 2017, when it was served with Barnett's complaint in case No. 17CV-322; it was put on notice of these rights again in April 2019 when it was served with Barnett's complaint in case No. 19CV-2897. Nationwide asserted cross-claims against Fernan for indemnity, contribution, or subrogation in both cases. Nationwide's answer and cross-claims were served on Fernan by certified mail in case No. 17CV-322; however, the trial court record in case No. 19CV-2897 does not indicate successful service of Nationwide's answer and cross-claims. Despite there being no indication of service, it appears Nationwide did not take any further action in case No. 19CV-2897 to preserve its subrogation claim against Fernan. Thus, like the insurers in *Ponser*, Nationwide appears to have waited to protect its subrogation claim while the time for service of Barnett's complaint elapsed.

{¶ 35} Under these circumstances, we conclude Barnett did not breach the subrogation provisions in her insurance policy with respect to the March 2015 collision. *See Ponser* at ¶ 53 (concluding there was "no evidence that the appellees breached the subrogation provisions in their respective policies"). Because the subrogation provisions were not breached, no presumption of prejudice arises and we need not reach the second step of the *Ferrando* analysis. Therefore, the trial court erred by concluding Nationwide was entitled to judgment as a matter of law on Barnett's claim for uninsured motorist coverage for the March 2015 collision.

**3. Whether voluntary dismissal of Barnett's claims against Cofield breached the subrogation provisions and prejudiced Nationwide's subrogation rights**

{¶ 36} Barnett also argues the trial court erred by granting summary judgment in favor of Nationwide on her claims related to the January 2019 collision. The trial court's decision failed to specifically explain why Nationwide was entitled to summary judgment on Barnett's claims related to the January 2019 collision. Similar to its arguments regarding Barnett's claims related to the March 2015 collision, Nationwide argues summary judgment was proper because its subrogation rights were prejudiced by Barnett's voluntary dismissal of her claims against Cofield. On appeal, Barnett states she dismissed her claim against Cofield because he was a passenger in her vehicle during the January 2019 collision,

and asserts the unidentified John Doe defendant was the driver of the other vehicle. Nationwide asserts Cofield remained potentially liable for causing the January 2019 collision because Barnett did not amend her complaint to remove the claim against Cofield, and that its subrogation rights against Cofield were prejudiced by Barnett's voluntary dismissal of her claims against Cofield.

{¶ 37} In effect, Barnett asserts the January 2019 collision was caused by a hit-and-run driver. Under Ohio law, the definition of uninsured motorist includes an owner or operator of a motor vehicle whose identity cannot be determined, when there is independent corroborative evidence to prove that an injury was proximately caused by the unidentified operator. R.C. 3937.18(B)(1)(c). Barnett's insurance policy at the time of the January 2019 collision provided that a claimant seeking uninsured motorist coverage must promptly notify the police if a hit-and-run driver was involved and "[p]romptly send [Nationwide] copies of the legal papers if a suit is brought." (Nationwide Answer, Ex. B, Sept. 20, 2018 – Mar. 20, 2019 Nationwide Auto Policy, Part E(C)(2).) Thus, similar to our analysis above, the policy in effect at the time of the January 2019 collision did not require Barnett to file suit against an uninsured driver. Moreover, to the extent Nationwide argues Cofield remained potentially liable because Barnett did not amend the complaint to remove Cofield after dismissing her claims against him, Nationwide was on notice of any potential subrogation rights against Cofield as of the time Barnett filed the amended complaint and could have acted to protect those subrogation rights. Nationwide's answer to the amended complaint did not include any cross-claims related to the January 2019 collision, unlike its answer to the original complaint, which included cross-claims against Johnson, Strickland, and Fernan for indemnity, contribution, or subrogation.

{¶ 38} Under these circumstances, we conclude Barnett did not breach the subrogation provisions in her insurance policy with respect to the January 2019 collision. Therefore, the trial court erred by concluding Nationwide was entitled to judgment as a matter of law on Barnett's claim for uninsured motorist coverage for the January 2019 collision.

## IV. Conclusion

{¶ 39} For the foregoing reasons, we sustain Barnett's sole assignment of error and reverse the judgment of the Franklin County Court of Common Pleas to the extent it granted

summary judgment in favor of Nationwide on Barnett's claims for uninsured motorist coverage related to the March 2015 collision and the January 2019 collision.  We remand this matter to the Franklin County Court of Common Pleas for further proceedings consistent with law and this decision.

*Judgment reversed*;
*cause remanded.*

JAMISON and BOGGS, JJ., concur.

————————————